PENNSYLVANIA HUMAN RELATIONS COMMISSION, on Behalf of Brian C. DAVIS, Plaintiffs

v.

ROBERT H. WISE MANAGEMENT and Gypsy Lane Owners Association, Defendants.

Commonwealth Court of Pennsylvania.

Heard Jan. 6, 2004.

Decided Jan. 22, 2004.

Publication Ordered Feb. 20, 2004.

---

1. Pa.R.A.P.1925, **Opinion in Support of Order**, (b) **Direction to file statement of matters** complained of.

William R. Fewell, Jr., Harrisburg, for plaintiffs.

Karen Kress Weisbord, Philadelphia, for defendants.

OPINION BY Senior Judge FLAHERTY.

Brian Davis, through the Pennsylvania Human Relations Commission (HRC), sought damages against the Gypsy Lane Condominium Owner's Association (Gypsy Lane) for unlawfully discriminating against him based on his familial status with regard to use of the condo pool. After a trial, this Court found that Davis failed to sustain his burden of proof and entered a verdict against HRC. This Court also gave the parties 30 days to file post-trial motions.[1] Gypsy Lane filed an Application for Award of Attorney's Fees and Expenses and HRC filed preliminary objections and a Response to that Application. For the reasons set forth below, we grant Gypsy Lane's Request for attorney's fees under the Pennsylvania Human Relations Act (Human Relations Act).[2]

Gypsy Lane requests attorney's fees under the following four provisions: 1) Section 9(d.1) if the Human Relations Act,[3] 2) Section 2503 of the Judicial Code, 42 Pa. C.S. § 2503, 3) the Costs Act[4] and 4) Pa. R.A.P. 2743 and 2744. HRC has filed preliminary objections with regard to Gypsy Lane's request for attorney's fees under the Costs Act and Section 2503 of the Judicial Code and has also filed a response to Gypsy Lane's request for attorney's fees.

Initially, we note that during the hearing on Gypsy Lane's request for attorney's fees, HRC stated that pursuant to Pa. R.C.P. No. 1028(d), it should have the chance to plead over within twenty days in the event its preliminary objections are overruled. We disagree. The merits of this case have been decided against HRC and now this case is before this Court on post-trial motions in the nature of a re-

---

1. Pa. R.C.P. No. 227.2 provides that "[a]ll post-trial motions and other post-trial matters shall be heard and decided by the trial judge ... If the trial judge for any reason cannot hear the matter, another judge shall be designated to act ..." Senior Judge Eunice Ross, who was the trial judge, retired on December 31, 2003, after which this Application was assigned to the author of this opinion for argument on January 6, 2004.

2. Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951–963.

3. 43 P.S. § 959(d.1).

4. Act of December 13, 1982, P.L. 1127, *as amended*, 71 P.S. § 2031–2035.

quest for attorney's fees. The rules with regard to preliminary objections only apply to *pleadings,* not motions. Post-trial motions are governed by Pa. R.C.P. No. 227.1, which provides, in relevant part, that:

(a) After trial and upon the written Motion for Post–Trial Relief filed by any party, the court may

. . .

(5) enter any other appropriate order.

Therefore, with the authority given to this Court by Pa. R.C.P. No. 227.1(a)(5), we will proceed to address the merits of Gypsy Lane's request for attorney's fees and enter an appropriate order.

First, Gypsy Lane requests attorney's fees under the Costs Act. Section 3 of the Costs Act provides, in relevant part, that:

(a) Except as otherwise provided or prohibited by law, a Commonwealth agency that initiates an adversary adjudication shall award to a prevailing party, other than the Commonwealth, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer finds that the position of the agency, as a party to the proceeding, was substantially justified or that special circumstances made an award unjust.

(b) A party seeking an award of fees and expenses *shall submit an application for such award to the adjudicative officer* and a copy *to the Commonwealth agency* within 30 days after the final disposition of the adversary adjudication

. . .

(c) *The adjudicative officer shall make a finding of what fees and expenses to be awarded,* if any, within 30 days of receipt of the application and may reduce the amount to be awarded, or deny an award, to the extent that the party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy. The decision of the adjudicative officer under this section shall be made a part of the record containing the final decision in the adversary adjudication and shall include written findings and conclusions and the reasons or basis therefor.

(d) Any party to an adversary adjudication may submit a brief to the adjudicative officer in support of its position as to whether fees and expenses should be awarded.

(e) *A party dissatisfied with the fee determination made under subsection (a) may petition for leave to appeal such fee determination to the court having jurisdiction* to review final orders of a Commonwealth agency under 42 Pa.C.S. (relating to judiciary and judicial procedure). If the court denies the petition for leave to appeal, no appeal may be taken from the denial. If the court grants the petition, review of the fee determination shall be in accordance with the standards in 2 Pa.C.S. § 704 (relating to disposition of appeal).

71 P.S. § 2033.

■ The Costs Act provides for an award of fees and expenses *by an adjudicative officer of an agency* after an adjudication *by that agency.* Any party aggrieved by that determination may then appeal to this Court. Here, there was no adjudication by HRC, which was the Commonwealth agency in this case. Rather, there was an adjudication by this Court, as this was an action filed in our original jurisdiction. Therefore, the Costs Act would not apply to this case. Accordingly, Gypsy Lane's request for attorney's fees under the Costs Act is denied.

■ Additionally, Gypsy Lane requests attorney's fees under Pa. R.A.P. 2743 and 2744. However, Pa. R.A.P. 2744(2) only

applies if the court "determines that an *appeal* is frivolous ..." (emphasis added). Again, because this was an action filed in our original jurisdiction rather than an appeal of a previous determination, Gypsy Lane's request for attorney's fees under the Rules of Appellate Procedure is likewise inappropriate.

■ Next, Gypsy Lane requests attorney's fees under Section 2503 of the Judicial Code, which provides, in relevant part, that:

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

. . .

(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was *arbitrary, vexatious or in bad faith.*

(10) Any other participant in such circumstances *as may be specified by statute heretofore or hereafter enacted.*

42 Pa.C.S.A. § 2503 (emphasis added).

HRC argues that Gypsy Lane should be limited to requesting costs under the Human Relations Act. We agree. The Statutory Construction Act provides, in relevant part, that:

Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S.A. § 1933.

Section 2503 of the Judicial Code was enacted on July 9, 1976 and the more specific provisions regarding the assessment of fees in the Human Relations Act, paragraphs (3) and (4) of Section 9(d.1), were added in 1991 and 1997. Section 2503(10) of the Judicial Code, which provides for counsel fees for "[a]ny other participant in such circumstances *as may be specified by statute heretofore or hereafter enacted"* provides for the later enacted, more specific provisions for attorney's fees in the Human Relations Act. Therefore, Gypsy Lane's request for attorney's fees under Section 2503(9) of the Judicial Code is denied.

Having determined that Gypsy Lane may only seek attorney's fees under the Human Relations Act, we will proceed to address the merits of Gypsy Lane's request in this regard. Section 9(d.1) of the Human Relations Act provides, in relevant part, that:

(3) If, after a trial, Commonwealth Court finds that a respondent has not engaged in or is not engaging in any unlawful discriminatory practice as defined in this act, the court may award attorney fees and costs to the prevailing respondent *if the respondent proves that the complaint upon which the civil action was based was brought in bad faith.*

(4) If, after a trial, the Commonwealth Court finds that a respondent has not engaged in any unlawful discriminatory practice as defined in this act, the court may award attorney fees and costs to the prevailing respondent *if the court determines that the complaint is frivolous and that the Commission dealt with the party complained against in a wilful, wanton and oppressive manner,* in which case the Commission shall be ordered to pay such costs and attorney fees.

43 P.S. §§ 959(d.1)(3) and (4) (emphasis added). Since subsection (d.1)(3) express-

ly permits attorney's fees and costs if bad faith alone is found, subsection (d.1)(4) obviously does not require additional findings in order to support an award of attorney's fees. Rather, subsection (d.1)(4) establishes a completely different basis for awarding attorney's fees and costs. Thus, the Human Relations Act establishes two different bases for awarding attorney's fees and costs. Therefore, in order for an award of fees to be appropriate, this Court must find either that the complaint was brought in bad faith or that the complaint was not only frivolous but also that HRC dealt with Gypsy Lane in a willful, wanton and oppressive manner.

### Bad Faith

■ The Human Relations Act makes it unlawful to "[d]iscriminate against any person in the terms or conditions of selling or leasing any housing accommodation or commercial property or in furnishing facilities, services or privileges in connection with the ownership, occupancy or use of any housing accommodation or commercial property because of ... *familial status* ..." 43 P.S. § 955(h)(3) (Emphasis added). "Familial status" is defined as: "one or more individuals who have not attained the age of eighteen years being domiciled with: (1) a parent or other person having legal custody of such individual or individuals; or (2) the designee of such parent or other person having such custody, with the written permission of such parent or other person." 43 P.S. § 954(t).

On June 7, 1995, Davis filed a formal complaint with HRC alleging that, in the past, he received six pool passes but that, in May of 1995, he was only issued two resident passes and two guest passes. Davis alleged that Gypsy Lane's pool pass policy, which limits each condominium to two free resident passes and two guest passes with the right to purchase additional pool passes at $2.00 on weekdays and $5.00 on weekends, discriminated against him, his wife and their four children because they need six pool passes if they all wish to use the pool at the same time.

Although HRC investigated the pool pass procedure it did not inquire into the eligibility of Davis for familial status which was required to proceed with a charge of a violation of the Human Relations Act. It then did nothing until nearly six years later when HRC issued a Finding of Probable Cause wherein it found probable cause to file a complaint against Gypsy Lane for discriminating against Davis based on his *familial* status, a status into which status it never inquired.

Gypsy Lane then proceeded with discovery before the HRC. HRC failed to timely answer and then failed to properly answer interrogatories. As such, Gypsy Lane had to file a motion to compel discovery with this Court. Eventually, a hearing was scheduled for July of 2001. However, shortly before the hearing, HRC, on behalf of Davis, elected to prosecute its action in the Commonwealth Court and then filed a Complaint in this Court on October 19, 2001. On November 8, 2001, Gypsy Lane filed an Answer. Over sixteen months later, on March 25, 2003, because HRC had not prosecuted its Complaint, this Court issued a Rule to Show Cause Why Action Should Not Be Dismissed. In its Answer to the Rule to Show Cause, HRC admitted that its staff "due to an extensive caseload was not as proactive in pursuing the matter as was called for." (HRC's Answer to Rule to Show Cause, para. 6). Only five weeks later, however, on April 29, 2003, Gypsy Lane had to file a motion for sanctions in order to again compel HRC to answer interrogatories. Eventually, a trial was held in this Court's original jurisdiction on June 30, 2003. On September 30, 2003, a verdict was entered against HRC.

HRC's Complaint upon which this civil action was based alleges that Davis and his family were discriminated against based on their familial status regarding their use of the condominium pool and further states in Count I, para. 16, that: "Until the summer of 1996 [Davis] received six resident passes, one for he and his *wife,* three for *their children* and one for his son . . ." (emphasis added). Davis had previously made the same allegation that he, his *wife* and *his children* were discriminated against in the complaint he filed with HRC. However, Davis was found to have never married the woman he claimed was his wife, nor was he ever the legal custodian of any of the three children of Ms. Williams. Ms. Martinez, the Housing and Commercial Property supervisor for HRC's Philadelphia region who testified at trial, admitted that it would not be proper to file a complaint based solely on the word of the complainant. (7/01/2003 trial transcript, p. 290).

HRC argues that it cannot be held liable for not correctly judging the credibility of people like Davis who file complaints with HRC. However, HRC cannot make credibility judgments its shield. The poor judgment of HRC was not in assessing the credibility of the complainant but in accepting it at face value without making a reasonable inquiry into Davis's allegations before it made its determination that a familial relationship existed in its Finding of Probable Cause and before making its verification to the Complaint filed in this Court alleging that such a familial relationship existed. When its lack of investigation was challenged at trial, it failed to produce any evidence of a reasonable investigation. The record of the trial indicates no inquiry by HRC at all into Davis's representation when it vouched in the verification that he was qualified for "familial status", which was an essential element of the cause of action it was filing. Addition-

ally, the trial judge's determination that Davis was not credible is supported by ample substantial evidence. The Complaint filed with this Court by HRC contained uninvestigated, unsubstantiated and false statements regarding the familial status of Davis. Therefore, Gypsy Lane has proved "that the complaint upon which the civil action was based was brought in bad faith" as required by Section 9(d.1)(3) of the Human Relations Act.

Although this conclusion that the Complaint was filed in bad faith is sufficient for awarding attorney's fees and costs under Section 9(d.1)(3) of the Human Relations Act, it is also found that HRC filed a frivolous complaint and that HRC dealt with Gypsy Lane in a willful, wanton and oppressive manner which alternatively justifies an award of attorney's fees and costs under Section 9(d.1)(4) of the Human Relations Act.

### *Frivolous*

■ The trial judge found that HRC produced no credible, admissible evidence at trial that Gypsy Lane ever knew or had reason to know how many children Davis had living with him in his condominium or that the pool policy was changed to discriminate against condominium occupants who had too many children living with them. The trial judge also found that "[t]he credible, admissible evidence shows that strict enforcement of the policy was reinstated solely to prevent pool overcrowding, pool use by unsupervised children, conflicts about pool use, the use of pool passes by outsiders and general safety concerns." (June 30, 2003 decision of this Court, p. 3). Additionally, the Complaint was filed without any inquiry into the essential element of the cause of action, i.e. familial status of the complainant, and also without any credible, admissible evidence of discrimination and without any

credible, admissible evidence that either HRC or Gypsy Lane knew how many people lived with Davis. In fact, Davis admitted at trial that he was not married to the woman he lived with and her three children who were not his children. This Court believes that the Complaint was not only filed in bad faith but was also frivolous as within the meaning of Section 9(d.1)(4) of the Human Relations Act.

### Willful and Wanton

This Court also believes that, in filing the frivolous Complaint and then continuing to pursue the Complaint against Gypsy Lane, HRC dealt with Gypsy Lane in a willful and wanton manner. HRC's actions were willful in that, despite not having any credible evidence of discrimination, in the proceedings, it knowingly and deliberately continued with its unfounded action in this Court against Gypsy Lane.

HRC's conduct after filing the Complaint was also wanton. At trial, the investigator for HRC testified that at a fact-finding conference that a representative of Gypsy Lane confirmed that Gypsy Lane knew how many people resided with Davis. This element of knowledge by Gypsy Lane made up part of HRC's "prima facie case" against Gypsy Lane for discrimination against Davis based on his familial status. (7/01/2003 trial transcript, pp. 234–239). However, Gypsy Lane denied attending any fact-finding conference and HRC's logs of the conference show that Gypsy Lane was not in attendance. (7/01/2003 trial transcript, p. 295). As such, this Court found in its previous opinion that HRC "relied for proof of knowledge [as to how many people resided with Davis] upon *non-existent admissions* made by an association representative in a fact-finding conference never attended by such representative." (Emphasis added). As found by this Court, such evidence was "incompe-

tent, incredible and *without any substance.*" (June 30, 2003 decision of this Court, p. 5) (Emphasis added).

HRC failed to cooperate in discovery proceedings before the Commission and did not comply until it was forced to do so after Gypsy Lane filed a motion to compel. HRC showed such little regard for the allegations of discrimination by Davis that it took no action for nearly six years after receiving the initial complaint from Davis. Then, HRC scheduled a hearing before its Commission, which could have ended this litigation. However, HRC cancelled the hearing after Gypsy Lane had prepared for the hearing and instead filed a Complaint with this Court.

Moreover, after Gypsy Lane filed an Answer in this Court, HRC did nothing to prosecute its action for fifteen months until this Court threatened to dismiss its Complaint. HRC continued to pursue the Complaint filed in this Court based on uninvestigated false statements. HRC also pursued its Complaint despite the overwhelming evidence that the pool policy was enforced uniformly. HRC relied on non-existent admissions and asserted through its witness that a fact finding conference was attended by Gypsy Lane when it was proven that Gypsy Lane never attended said conference. It was, therefore, wanton for HRC to pursue Gypsy Lane for over eight years for discrimination against Davis based on a familial status which never existed and a pool policy which was fair.

### Oppressive

Further, this Court believes that, considering the totality of the circumstances detailed above, HRC's conduct was not only willful and wanton but oppressive as well. In addition, the record shows that HRC, after filing the Complaint, caused additional attorney's fees and expenses by

its dilatory conduct and by failing to cooperate in discovery during proceedings before the Commission and the proceedings in this Court. Because of this conduct, Gypsy Lane had to file motions to compel and motions for sanctions to obtain the information to which it was entitled. Thus, after a lapse of six years after receiving the initial complaint from Davis, HRC reopened its prosecution of this case when a reasonable review of the facts known and further investigation at this later time would have raised a substantial question as to whether it should dismiss the Complaint for lack of proof of the essential elements of the cause of action rather than proceed in this Court with reckless disregard of the consequences of its action against the citizens who were ultimately responsible for Gypsy Lane's costs.

For some unknown reason, HRC continued to deal with Gypsy Lane in this oppressive manner even at the trial. When HRC presented its case at trial, it had to prove that Gypsy Lane knew how many children were living with Davis in his condominium. To prove this, it presented the testimony of a HRC employe who falsely testified, under oath, that Gypsy Lane learned of this at a fact-finding conference. It was oppressive, at the very least, for HRC to prosecute this action when HRC's own log of that conference showed that Gypsy Lane did not have a representative there, which is why the trial judge found that HRC "relied for proof of knowledge [as to how many people lived with Davis] upon non-existent admissions [made] by an association [Gypsy Lane] representative in a fact-finding conference never attended by such representative." (June 30, 2003 decision of this Court, p. 5). This evidence also supports a finding of oppressive conduct.

HRC demanded damages "in excess of $20,000" in its Complaint filed with this Court for the embarrassment and humiliation suffered by Davis when it should have known that continuing with the action was unfounded. In order to support this claim for damages, HRC, through Davis, asserted at trial that Davis's son suffers from stammering, nervousness and poor school performance as a result of problems with the pool pass. However, HRC provided no evidence to support this allegation other than the testimony of Davis, which was found to be completely incredible by the trial judge, which is understandable in view of Davis's admission that his sworn allegation was false that the woman and three children living with him were his wife and children. HRC's own evidence about Gypsy Lane's knowledge of Davis's residents also proved to be blatantly false. To continue to prosecute its case for Davis based upon baseless allegations in order to obtain a significant sum of money is certainly additional evidence of oppressive conduct to the residents of the other 283 condominiums who have to pay the financial obligations of Gypsy Lane arising out of its defense of a frivolous claim filed in bad faith with a reckless disregard of the consequences. HRC has caused the members of the Gypsy Lane community to pay significant sums of money (almost $40,000) in attorney's fees and costs, which are always painful, but here the aggravation has been continually endured for a period exceeding eight years to date.

HRC filed this frivolous Complaint in bad faith and, thereafter, by its actions and inaction in discovery, presented false testimony through witnesses. Also, its inaction by letting this case lapse for six years and then resurrecting it instead of dismissing it caused Gypsy Lane to incur significant attorney's fees and costs. Thus, HRC's actions in this case rise to the level of being oppressive.

 HRC, as a Commonwealth Agency prosecuting actions at no cost to the

complainant, must be held to the same standard as attorneys are when suit is filed against citizens of this Commonwealth. HRC is compelled to make a reasonable investigation prior to filing suit not only of the facts asserted by it in the complaint about the defendant's conduct, but it must also investigate facts a complainant relates about himself when those facts, such as those herein with regard to familial status, are essential elements to make a prima facie case of the cause of action.

Accordingly, Gypsy Lane's request for attorney's fees and costs is granted under both Sections 9(d.1)(3) and (4) of the Human Relations Act.[5] During argument on Gypsy Lane's request for attorney's fees, HRC objected to the attorney's fees and costs being sought by Gypsy Lane on the grounds that Gypsy Lane's attorney provided a low quality of representation, did not cooperate with HRC and duplicated work previously done. This Court has reviewed Gypsy Lane's Application for an Award of Attorney's Fees, including the brief and the background and experience of Gypsy Lane's attorney, and finds the fees incurred as detailed in the Application to be both reasonable and without duplication because HRC made a review necessary when it reopened prosecution of this case before the HRC after doing nothing for six years and also when it later caused another review in this Court when it filed its Complaint and then did nothing again for fifteen months until it received a notice of dismissal if it did not proceed with its action. The quality of the representation by Gypsy Lane's attorney is found to have been superior. Additionally, after reviewing the record, we find no indication that Gypsy Lane's attorney was uncooperative

as alleged by HRC. As such, Gypsy Lane is awarded $38,504.64, which is the total amount of attorney's fees and expenses to date that Gypsy Lane has asked for in its Application.

Gypsy Lane has also requested the right to update its request for attorney's fees and costs for time and costs expended after October 23, 2003. Gypsy Lane's request is granted. This Court directs Gypsy Lane to submit this update within 30 days.

### ORDER

AND NOW, January 22, 2004, Gypsy Lane's request for attorney's fees and costs in the amount of $38,504.64 is hereby GRANTED for the reasons set forth in the foregoing opinion. Gypsy Lane is further directed to file, within 30 days, an update as to the attorney's fees and costs it incurred after October 23, 2003.

---

**5.** Although attorney's fees are awarded under both Sections 9(d.1)(3) and (4), only one recovery is possible.